# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**MARY DANDRIDGE**                                                                          **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 2:08cv229KS-MTP**

**STATE OF MISSISSIPPI, ET AL**                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss **[#8]** filed on behalf of the defendant American Correctional Association (ACA). The court, having reviewed the motion, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion to dismiss is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

The plaintiff, Mary Dandridge, is pursuing claims arising out of the death of her son, Trenis Readus, which death is alleged to have resulted from Readus' incarceration at the South Mississippi Correctional Institution (SMCI) in Leakesville, Mississippi. More specifically, the plaintiff alleges that, during late October 2007, having been incarcerated at SMCI since June 2003, Readus was subjected to an unjustified beating at the hands of employees of SMCI, which beating led to Readus' transportation to the Greene County Hospital and later being flown to Forrest General Hospital in Hattiesburg. The plaintiff alleges that Readus was not allowed to undergo life saving procedures because of the refusal of Chief Medical Officer, Kentrell Liddell, M.D. resulting in allegedly

inadequate medical care, ultimately causing Readus' death.

The plaintiff filed this action against numerous defendants, all of whom, except ACA, are employees of the State of Mississippi or the third-party medical services providers hired by the State to provide medical services at SMCI. The plaintiff alleges that Readus was deprived of his constitutional rights by all of the defendants (Counts I-III of the Complaint) and that the deputies who allegedly assaulted him were not properly trained or supervised by certain defendants, not including ACA (Count IV of the Complaint).

The plaintiff also alleges, with respect to some of the defendants (not including ACA), that the deputies whose conduct is in question were negligently hired and retained and were not properly disciplined (Count V of the Complaint); and that some of the defendants (not including ACA) made false public statements regarding the circumstances surrounding Readus' death (Count VI), battered the Deceased (Count VII.A.), assaulted the Deceased (Count VII.B.), conspired to cause the beating death of the Deceased (Count VII.C.), committed the common law tort of outrage by their involvement in the beating death of the Deceased (Count VII.D.), and intentionally inflicted emotional distress upon the Deceased (Count VII.E.).

The plaintiff alleges in Count VII.F. of the Complaint that (a) the Deceased was a third party beneficiary of a contract between ACA and SMCI pursuant to which ACA inspected and accredited SMCI; (b) ACA breached its contract when it knew or should have known that SMCI was not operated in accordance with ACA standards; and (c) that the breach by ACA directly and proximately caused the death of Readus. Finally, the plaintiff alleges in Count VII.G. of the Complaint that the conduct of all defendants

resulted in the wrongful death of Readus.  The plaintiff seeks compensatory and punitive damages, plus attorney's fees, from all defendants including ACA.

ACA is a private, not-for-profit corporation organized under the laws of the State of New York and exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code as a charitable, educational organization.  ACA's offices are located in Alexandria, Virginia.

ACA has over 20,000 members including corrections officials and officers, sheriffs, probation and parole officers, members of the judiciary, ex-offenders and others interested in the improvement of correctional systems in the United States and abroad.  Through its Commission on Accreditation for Corrections, ACA maintains a private, nongovernmental, voluntary accreditation program pursuant to which correctional facilities may apply for ACA accreditation.  Accreditation is based upon an applicant correctional facility's demonstration, at the time of the accreditation inspection, of compliance with standards adopted by ACA.  Facilities are accredited for a period of three years following an audit or inspection of the facility by representatives of ACA.  Because the accreditation program is entirely voluntary, ACA has no authority to require a correctional facility to adopt any procedures or to change any existing procedures; rather, ACA's sole authority is to deny accreditation or reaccreditation to any facility found not to be in compliance with ACA's standards.

SMCI entered into a Reaccreditation Contract with ACA on February 8, 2005.  The Reaccreditation Contract required ACA to inspect SMCI to determine whether it was in compliance with applicable ACA standards.  ACA did not participate in the hiring or retention of SMCI deputies and did not provide training, instruction or supervision to

anyone or for the benefit of anyone working in SMCI, including its deputies.

ACA's publication entitled Standards for Adult Correctional Institutions, 4th Edition (Supp. 2004), was applicable to SMCI inspection in April, 2005. In order for SMCI to obtain reaccreditation, it was required to be in compliance with one hundred percent (100%) of the Mandatory ACA Standards and at least ninety-five percent (95%) of the Non-Mandatory ACA Standards applicable to it.

When inspected by three ACA-appointed auditors on April 18-20, 2005, SMCI was in compliance with 100% of all applicable Mandatory Standards and with 99.5% of all applicable Non-Mandatory Standards for adult correctional institutions. As a result, SMCI was reaccredited by ACA's Commission on Accreditation for Corrections on August 6, 2005. Consistent with the allegations of the Complaint, no representatives of ACA were present at the SMCI at the time of the commission of the acts alleged to have caused or led to the death of Readus.

## **STANDARD OF REVIEW**

The defendant ACA has moved the court to dismiss this matter under Rule 12(b)(6) for failure of the plaintiff to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, the court may not go outside the pleadings, specifically the complaint in this case. "The Rule 12(b)(6) motion . . . only tests whether the claim has been adequately stated in the complaint." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).

As the Fifth Circuit has stated, "We may not go outside the pleadings. We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff.

We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[1]  *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted).  *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____ , _____ , 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007)(other citations omitted).  Of course, if any matters outside the complaint are considered, the motion is converted to one for summary judgment.  *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980).

## ANALYSIS

In the Complaint, the plaintiff alleges in Counts I-III that she and other beneficiaries of the estate of Readus are entitled to damages as a result of the defendants' alleged violations of 42 U.S.C. § 1983 (deprivation of the Deceased's constitutional rights), 42 U.S.C. § 1985 (conspiracy to deprive the Deceased of his constitutional rights) and 42 U.S.C. § 1986 (failure to prevent such conspiracy).  ACA asserts that each of these causes of action fails to state a claim against it as a matter of law and must be dismissed.

---

[1] Even where the plaintiff fails to respond to the motion, as here, the court is required to view the facts in the light most favorable to him.

The plaintiff asserts that Trenis Readus was deprived of his Fifth, Eighth, and Fourteenth Amendment rights, all allegedly in violation of 42 U.S.C. § 1983.[2] As a prerequisite to maintaining a Section 1983 claim, the plaintiff must establish, the following: (a) that the defendants were acting under color of state law, and (b) that while acting under color or state law, the defendants violated rights of the decedent that are protected by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

In addition, "personal involvement is an essential element of a civil rights action." *Thompson v. Steele*, 709 F2d 381 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983). ACA must have either actively participated in the acts complained of, or itself implemented unconstitutional policies that resulted in the alleged injuries. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

In this case, the defendant is correct that there is absolutely no allegation that anyone representing ACA participated at all in the alleged beating of Readus or in his alleged inadequate medical care, or that ACA implemented policies that resulted in the beating, thus, the plaintiff's claim under 42 U.S.C. § 1983 must fail as against ACA and its accreditation auditors as demonstrated hereinafter. *See also Williams v. American Correctional Association*, No. 1:06cv196LGJMR, 2008 WL 244322, *3 (S.D. Miss. Jan. 27, 2008).

---

[2] . "The Fifth Amendment applies only to the actions of the federal government, and not to the actions of a [state or] municipal government . . . ." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)(quoting *Richard v. Henson*, 70 F.3d 415, 416 (5th Cir. 1995)). There are no claims asserted against any federal agency or entity in the plaintiff's Complaint. Therefore, any claims the plaintiff is making for alleged due process violations under the Fifth Amendment against the named defendants shall be dismissed.

With respect to whether the acts of ACA may be deemed "state action" under 42 U.S.C. § 1983, this is permitted only when the challenged conduct may be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753 (1982). The *Lugar* Court provided a two-part "fair attribution" test, as follows:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

*Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753-54.

The status of ACA as a private party is beyond dispute. The Fifth Circuit has recognized three tests to determine whether or not a private party will be deemed a state actor. *Bass v. Parkwood Hospital*, 180 F.3d 234, 241-242 (5th Cir. 1999). Under the state compulsion test, the issue is whether the private party's conduct at issue is actually compelled or coerced by the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786 (1982). Under the joint action or nexus test, state action may be found when the government has "so far insinuated itself into a position of interdependence with the private actor that it was a joint participant in the enterprise." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 457 (1974). Finally, under the public function test, the issue is whether the private party is performing a function traditionally within the exclusive province of, or exclusively reserved to, the state. *Bass*, 180 F.3d at 242. The plaintiff has failed to allege sufficient facts to show that ACA is a state actor for purposes of the plaintiff's constitutional deprivation claims under any of

the three approved methods of analysis.

There is no evidence of coercion by the state in this case. ACA is not controlled or regulated by the state. No government entity or agency has any control over the accreditation services provided by ACA, other than deciding whether or not the entity or agency wishes to take advantage of such services by seeking accreditation. ACA's accreditation program is purely voluntary, and no government agency or employee has the authority to order ACA to investigate or accredit any facilities or to direct the investigations in any way. In addition, ACA has no authority over the facility, other than to investigate and grant or deny accreditation. Nothing in the Complaint suggests that the State of Mississippi or any other governmental entity coerced or compelled any action by ACA. ACA cannot be deemed a state actor due to any compulsion by the state.

Under the "joint action" or "nexus" test, private actors such as ACA can be found to have acted under color of law only if they are "willful participants in joint action with the state or its agent." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The evidence in this case indicates that ACA is a private and completely independent, non-profit, tax-exempt, charitable, educational organization. ACA and its accredited correctional facilities do have a contractual relationship pursuant to which the facilities are inspected and accredited, but a contractual relationship between a government agency and a private party, standing alone, is insufficient to convert a private action into a state action. *See Cornish v. Corr. Services Corp.*, 402 F.3d 545,549 (5th Cir. 2005); *see also National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 194-95 (1988).

ACA receives fees for its accreditation services only from those facilities seeking

accreditation; no federal grant funds are used in the accreditation program.  Because ACA's accreditation program is not a joint undertaking with the State of Mississippi or any other governmental entity, there is not a sufficient "nexus" between ACA and any government entity to deem ACA to be a state actor under this test.

Under the "public function" test, ACA does not, in establishing and operating its accreditation program, provide a service or function reserved exclusively to the state. While the State of Mississippi is empowered to control the conditions of confinement experienced at correctional institutions such as SMCI, ACA, through its accreditation program, exercises no power over those conditions.  ACA merely provides accreditation services to those facilities desiring accreditation.  *See McKeesport Hospital v. The Accreditation Council for Graduate Medical Education*, 24 F.3d 519 (3rd Cir. 1994) (holding that a private graduate medical school accrediting council's decisions on accreditation do not constitute state action).

The State of Mississippi is the entity with authority to control SMCI, not ACA. ACA's accreditation program is a private accreditation program powerless to change how a state correctional institution operates.  ACA's program is not a program which serves the traditional public function of regulating and operating correctional facilities. The plaintiff has not asserted any facts tending to suggest that ACA's accreditation program performs a function exclusively reserved for the government.  Thus, it has not been demonstrated or even alleged that ACA has assumed a power which is traditionally exercised by the government.

The allegations made in Count II of the Complaint assert that there existed an agreement among state officials and employees (a) "to teach[ing] the Deceased…a

lesson" by utilizing excessive force by beating the Deceased (Paragraph 28); (b) not to intervene in such beating (Paragraph 29); (c) to prepare and disseminate allegedly false reports regarding the cause of the Deceased's death (Paragraph 30); and (d) to cover up the true cause of the Deceased's death (Paragraph 31). Count II of the Complaint purports to assert a claim under 42 U.S.C. § 1985, but the plaintiff's allegations do not identify which of the types of actionable conspiracies are alleged to have occurred. ACA is not named as a participant or even mentioned in the allegations set forth in Paragraphs 28-31 of the Complaint.

To survive a motion to dismiss, a claim for conspiracy in violation of 42 U.S.C. § 1985 must contain an allegation that some racial animus lay behind the alleged conspirators' actions. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). Since ACA is not a governmental entity, its representatives are not state officials or employees. No representative of ACA is alleged either to have been present at the time of the beating or to have been otherwise a party to this alleged conspiracy. The Complaint does not allege that ACA or any other defendant acted with racial animus. In fact, the plaintiff alleges in the Complaint that the alleged abusive conduct "is believed to have taken place against all races…." Complaint at ¶ 16. Thus, Count II of the Complaint must be dismissed against ACA for failure to state a claim upon which relief can be granted. *Williams*, 2008 WL 244322 at *5. *See also Naguib v. Illinois Dept. of Professional Regulation*, 986 F. Supp. 1082, 1095 (N.D.Ill. 1997) (dismissing § 1985 complaint where defendant was not alleged to be a member of purported conspiracy and was not claimed to have acted with any

discriminatory animus).

In Count III of the Complaint, the plaintiff asserts that all of the defendants are liable under 42 U.S.C. § 1986 for negligent failure to prevent the conspiracy alleged in Count II. Since a valid §1985 claim is a prerequisite to a § 1986 claim, this Count must also fail. *See Bryan*, 213 F.3d at 276; *Williams*, 2008 WL 244322 at *5. Moreover, no representative of ACA is alleged to have been present at SMCI at any point near the time of the alleged conspiracy.

It is not clear from the Complaint whether the plaintiff is alleging that ACA was negligent in failing to adequately train and supervise SMCI deputies who are alleged to have beaten the Deceased. The evidence shows that as an accrediting organization, ACA does not engage in training or supervision of correctional officers. Although one of ACA's standards applicable to SMCI requires deputies and other staff to undergo regular, recurring training, ACA does not provide the training for the detention facility staff. This is confirmed by the provisions of the Accreditation Contract entered into between ACA and SMCI. Further, ACA is not involved in the supervision of deputies or any other staff at SMCI or any other facility going through the ACA accreditation process. In conducting an audit or assessment, ACA representatives are on site at a correctional facility for a limited time. In this case, the representatives visited SMCI on April 18-20, 2005. The representatives did not return to SMCI again until the facility was inspected for reaccreditation in May 2008.

Since ACA was not involved in the training and supervision of the persons alleged to have deprived the Deceased of his constitutional rights, and since it has no obligation to be involved in the training and supervision of the persons alleged to have

deprived the Deceased of his constitutional rights, ACA cannot be held legally responsible for any such deprivation under a theory of negligent failure to train or supervise. *See Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *see also Whiting v. Tunica County*, 222 F. Supp.2d 809, 816 (N.D. Miss. 2002); and *Williams*, 2008 WL 244322 at *5. Thus, because the role of ACA in its accreditation process did not include any training or supervision of any staff at the SMCI, Count IV of the Complaint should be dismissed as against ACA for failure to state a claim upon which relief can be granted.

The plaintiff did not make any specific allegations suggesting involvement by ACA in the conduct underlying Counts V or VI.A through VI.H of the Complaint and these Counts should be dismissed as well. "Despite the relaxed standard for pleading under the federal rules, the court will 'not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Evans v. Aultman* 2008 WL 190744, *1 (S.D.Miss. Jan. 18, 2008) (slip opinion)(quoting *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007)).

Likewise, the plaintiff's claim for "Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action" (Count V of the Complaint) must be dismissed against ACA because the plaintiff does not allege that ACA was in any manner involved in the hiring, retention, or discipline of the individuals whose conduct is alleged to have deprived Readus of his constitutional rights. There is no allegation that ACA hired the deputies or played any role in any decision regarding their discipline or their retention as employees of the SMCI. As well, the plaintiff's claims of battery and assault (Counts VII.A. and VII.B.) which allege a physical beating of the Deceased by

defendants who are not alleged to be representatives of ACA should be dismissed.

The plaintiff's "Civil Conspiracy" claim (Count VII.C.) arises out of the alleged joint participation of defendants, who are not alleged to be representatives of ACA, in the beating of the Deceased. It is not alleged that any representatives of ACA were present at any point during the period of time when these acts were allegedly directed at the Deceased. As a result, these claims cannot be maintained against ACA and should be dismissed for failure to state a claim upon which relief can be granted.

The plaintiff's claims for "The Common Law Tort of Outrage" (Count VII.D.), "Intentional Infliction of Emotional Distress" (Count VII.E.) and "Wrongful Death" (Count VII.G.) all are based upon defendants' "conduct on the date in question." Complaint at ¶¶59, 69. Because the Complaint contains no allegations as to ACA's conduct on the date of the Deceased's alleged beating, these claims too must fail against ACA. There are no allegations of any contact between any representatives of ACA and the Deceased.

The plaintiff's claim for "Fraudulent Misrepresentation and Seppression [sic]" (Count VI.) is explicitly based on public statements alleged to have been made by specifically identified defendants other than ACA. Neither ACA nor any of its representatives are alleged to have made any statement regarding the Deceased. As a result, this claim must also be dismissed as to ACA.

The defendant ACA next argues that the deceased was not a third party beneficiary to the Reaccreditation Contract. The plaintiff alleges that she, on behalf of the Deceased, is entitled to bring an action against ACA for breach of the Reaccreditation Contract entered into between ACA and SMCI. Complaint at ¶¶65-67.

Regardless of whether the plaintiff has alleged a breach of the Reaccreditation Contract or damage or injury flowing from the alleged breach, ACA asserts that the plaintiff's claim must fail because the Deceased was not a third party beneficiary to the contract.

Although a third person may enforce a promise made for his benefit even though he is a stranger to the contract or to the consideration, the right of a third party beneficiary to maintain an action on the contract must "spring" from the terms of the contract itself. *Mississippi High School Activities Assn, Inc. v. Farris, et al.*, 501 So.2d393, 395-97 (Miss. 1987). A third party beneficiary may sue for a breach of the contract "only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee." *Id.*

In the *Williams* case, *supra,* note 5, Judge Guirola held that an inmate at the Harrison County Adult Detention Center, which had been accredited by ACA, was not entitled to maintain a claim for breach of the accreditation contract because he was only an incidental beneficiary to that contract. This court agrees with Judge Guirola and finds that this conclusion is consistent with other courts which have addressed the issue. *See Jensen v. Zuern*, 517 N.W.2d 118 (N.D. App. 1994); *Miller v. Corrections Corp. of America*, 375 F. Supp.2d 889 (D. Alaska 2005); and *Gay v. Georgia Dept. of Corrections*, 606 S.E.2d 53 (Ga. App. 2004). Count VII.F. of the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Next, the plaintiff alleges that "ACA breached its contract with the Mississippi Department of Corrections and its third party beneficiary, the Deceased, Trenis Readus, when it knew or reasonably should have known that the South Mississippi Correctional

Institution was not operating pursuant to its mandated standards, policies and procedures." Complaint at ¶67.

ACA's contractual obligations to SMCI were to inspect the facility in April, 2005, and to determine, based upon said inspection, whether the facility was being operated in conformance with ACA's Standards for Adult Correctional Institutions, 4th Edition (Supp. 2004). SMCI was inspected and found to be in compliance, resulting in an award of reaccreditation on August 6, 2005. Nothing alleged by the plaintiff constitutes a breach by ACA of its contractual obligation to SMCI. The plaintiff does not allege that reaccreditation of SMCI in 2005, based upon an April, 2005, inspection, was inappropriate because of events which occurred in October, 2007. As held by Judge Guirola with regard to the Harrison County Adult Detention Center in the *Miller* case, *supra* note 5, there is no factual basis for a claim that this facility failed to qualify for ACA reaccreditation.

Because the plaintiff has failed to allege any facts that would support a claim that ACA acted under color of law or participated in a conspiracy, the plaintiff's constitutional claims (Counts I-III of the Complaint) should be dismissed as against ACA with prejudice. Count IV of the Complaint should be dismissed because ACA does not train or supervise employees of the correctional facilities it inspects and accredits. Counts V, VI, VII.A. through VII.E. and VII.G. of the Complaint should be dismissed because they contain no factual allegations concerning ACA. Finally, Count VII.F. of the Complaint should be dismissed because the Deceased was not a third party beneficiary to the Reaccreditation Contract between ACA and SMCI, and the plaintiff has not adequately alleged either a breach of that contract or a proximate relationship between any such

alleged breach and the death of Readus.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#8]** filed on behalf of the defendant American Correctional Association is granted and the plaintiff's Complaint is dismissed with prejudice as to defendant American Correctional Association. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 10th day of April, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE